E-FILED
Wednesday, 18 May, 2022  10:24:52 AM
Clerk, U.S. District Court, ILCD

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois  ☐ ▾



MAR 3 0 2022

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
                                      )        Case No. 22-mj- **7045**

Black iPhone; Model: A1784, with FCC ID: BCG-E3092A, )
Currently Located at 2117 W. Park Court, Champaign, )
Illinois. )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

       I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, which is attached hereto and incorporated by reference,

located in the        Central        District of        Illinois       , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached hereto and incorporated by reference.

       The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

       ☑ evidence of a crime;

       ☑ contraband, fruits of crime, or other items illegally possessed;

       ☑ property designed for use, intended for use, or used in committing a crime;

       ☐ a person to be arrested or a person who is unlawfully restrained.

       The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §2119 | Carjacking |
| 18 U.S.C. §924(c) | Possession of a Firearm During and in Relation to a Crime of Violence |

       The application is based on these facts:

See attached affidavit of FBI Special Agent Ryan McElroy, which is incorporated herein.

       ☑ Continued on the attached sheet.

       ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under
       18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

                                        s/Ryan McElroy

                                        *Applicant's signature*

                              FBI Special Agent Ryan McElroy

                                        *Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
       electronic mail and telephone        *(specify reliable electronic means).*

                                        s/Eric I. Long

Date:    3/30/2022

                                        *Judge's signature*

City and state:    Urbana, IL                 Eric I. Long, United States Magistrate Judge

                                        *Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Ryan McElroy, being first duly sworn on oath, state the following:

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property — an electronic device — which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since January 2019. I am currently assigned to the Springfield, Illinois, Division. My duties as a Special Agent with the FBI include investigating violent crimes such as armed robberies, carjackings, bank robberies, and violent criminal enterprises. I have gained experience in the conduct of such investigations through previous case investigations, formal training, and in consultation with law enforcement partners in local, state, and federal law enforcement agencies. I have participated in the execution of warrants to search and seize electronic devices, such as cellular telephones and computers.

3.      This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, reference will be made to law enforcement officers. Law enforcement officers are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular

1

contact regarding this investigation. This affidavit is also based upon information gained from interviews with cooperating citizen witnesses, whose reliability is established separately herein.

4. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal offenses.

5. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe violations of 18 United States Code, §924(c) and §2119.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6. The property to be searched is a black iPhone; Model: A1784 and FCC ID: BCG-E3092A. The Device was originally taken into evidence by the Bourbonnais Police Department for Bourbonnais PD Case Number 2022-00005407. The Device was taken into FBI custody on March 28, 2022 and is currently in FBI possession at the Champaign Resident Agency, 2117 W Park Ct in Champaign, Illinois.

7. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

8. On March 17, 2022, at approximately 3:27pm, law enforcement was dispatched to 865 Gettysburg Dr, Bourbonnais, Illinois for a report of shots fired. Upon

2

arrival, law enforcement made contact with Victim 1. Victim 1 advised responding officers that s/he had been robbed of his vehicle by two (2) black males at gunpoint. Victim 1 said, as the subjects fled the area in Victim 1's vehicle, s/he heard multiple shots being fired in his/her direction. Victim 1 described his/her car as a 2017 black BMW sedan. As law enforcement secured the scene, they recovered ten (10) .40 caliber casings near the scene of the robbery.

9.      In an interview, Victim 1 advised law enforcement that while s/he was sitting in his/her vehicle a black male (hereinafter referred to as "Subject 1") wearing a black shirt or hoodie and a black ski mask approached the front passenger window of the victim's vehicle. Subject 1 was armed with a firearm in each hand and demanded Victim 1 to get out of the vehicle. Victim 1 complied with Subject 1's demands and exited the vehicle. Once Victim 1 exited the vehicle s/he realized there was a second black male (hereinafter referred to as "Subject 2") wearing a red sweatshirt that approached Victim 1 and started to search him/her. Subject 2 took Victim 1's wallet and then entered the driver's compartment of Victim 1's vehicle while Subject 1 entered the front passenger compartment of the vehicle. The subjects then fled the area in Victim 1's vehicle and, as the vehicle was leaving the area, Victim 1 heard multiple shots being fired in his/her direction. At some point, Victim 1 realized his/her phone had fallen between the door and the driver's seat in his/her vehicle while exiting at Subject 1's demand.

10.      Law enforcement units across Kankakee County heard the description of Victim 1's vehicle provided by dispatch. A short while after hearing the description, units located a vehicle matching the description of the stolen car and confirmed the registration

matched that of the stolen vehicle. Units then pursued the stolen vehicle throughout Kankakee until the vehicle crashed near the intersection of Schuyler Avenue and River Road in Kankakee, Illinois at approximately 3:38pm on March 17, 2022, 11 minutes after receiving the initial call.

11.    After the crash, an individual matching Subject 1's physical description and clothing exited the stolen vehicle and fled the scene of the crash on foot. After a brief foot pursuit, law enforcement apprehended Subject 1. Subject 1 was apprehended wearing a black ski mask and black long sleeve shirt. Subject 1 was later identified as ANYCCO M. RIVERS (hereinafter referred to as "RIVERS"). RIVERS was taken to the hospital for treatment of minor injuries and then transported to Jerome Combs Detention Center in Kankakee, Illinois.

12.    As Subject 1 fled, an individual matching Subject 2's clothing exited the stolen vehicle and fled the scene of the crash on foot. Subject 2 was pursued on foot by additional responding law enforcement officers. After a brief foot pursuit, law enforcement apprehended Subject 2. Subject 2 was apprehended wearing a red sweatshirt. Subject 2 was later identified as LADONTA A. TUCKER (hereinafter referred to as "TUCKER"). TUCKER was taken to the hospital for treatment of minor injuries and transported to Jerome Combs Detention Center in Kankakee, Illinois.

13.    Law enforcement secured the scene of the crash and began to process the scene for evidence. Law enforcement located one (1) firearm on the road just outside of the driver's compartment of Victim 1's stolen vehicle. This firearm was later found to fire 9-millimeter cartridges. In the front passenger compartment, law enforcement found two

4

(2) additional firearms. One (1) firearm was later found to fire .40 caliber cartridges, matching the caliber of the casings found near the scene of the robbery. The last firearm was later found to fire .45 caliber cartridges.

14.     Law enforcement also recovered a cellular device from between the driver's seat and door jamb which Victim 1 later confirmed belonged to him/her. A second phone, a red iPhone, was found in the door panel in the front passenger compartment where RIVERS was believed to have been seated. Victim 1 advised this phone did not belong to him. A third phone, a black iPhone; Model: A1784 and FCC ID: BCG-E3092A (the Device), was recovered from TUCKER's person after he was searched incident to arrest.

15.   Based on my training and experience, I know that individuals involved in armed robberies like the robbery that occurred on March 17, 2022, in Bourbonnais, Illinois, often take measures to plan and prepare for their activity, including but not limited to traveling to the premises to be robbed, photographing the premises, discussing the robbery with others via text messages, searching the internet for information helpful in preparation of a robbery, and searching the internet to purchase items to be used in a robbery. Based on my training and experience, I believe that evidence of TUCKER's preparation of the March 17, 2022, robbery in the form of GPS location information, photographs, text messages, internet searches, call logs with co-conspirators, and contact information for co-conspirators will likely be stored within the Device.

16.  Additionally, based on my training and experience, I know that individuals involved in robberies like the March 17, 2022 robbery often take measures to prepare to sell or transfer the stolen items taken during the course of a robbery, including

but not limited to traveling to the locations where the stolen items will be transferred, discussing the means and methods of transferring stolen items after they are acquired with others via text messages, photographing the items to be stolen in preparation of reselling those items after the robbery, searching the internet for information helpful in preparation of transferring stolen items after they are acquired, and searching the internet for information helpful in locating purchasers of stolen items after they are acquired.

17. Additionally, based on my training and experience, I know that individuals involved in carjackings like the March 17, 2022, robbery often utilize the stolen goods to further facilitate violent crimes and/or criminal activity once the vehicles are acquired.

18.   Based on my training and experience, I believe that evidence of TUCKER's plan and preparation to sell or transfer the stolen items taken during the course of the March 17, 2022, robbery in the form of GPS location information, photographs, text messages, internet searches, call logs with co-conspirators (both those currently known to investigators and those unknown), and contact information for intended recipients of stolen items will likely be stored within the Device. Additionally, I know it is common for co-conspirators to transfer money in preparation of the robbery as well distribute proceeds from the robbery to co-conspirators through applications such as Apple Cash, Cash App, and/or other mobile banking applications.

19.     The Device is currently in the lawful possession of the FBI. It came into the FBI's possession the following way: seized incident to the arrest of TUCKER. Therefore, while the FBI might already have all necessary authority to examine the Device, I seek

6

this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

20.     The Device is currently in storage at the Champaign Resident Agency of the Federal Bureau of Investigation located at 2117 W Park Ct in Champaign, Illinois.. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the FBI.

## TECHNICAL TERMS

21. Based on my training and experience, I use the following technical terms to convey the following meanings:

a)     Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b)     Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images.

7

This storage media can contain any digital data, including data unrelated to photographs or videos.

c)      Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d)      GPS: A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation.   The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e)      IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses.  Some computers have static — that is, long-term — IP addresses, while other computers have dynamic — that is, frequently changed — IP addresses.

f)      Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

22. Based on my training, experience, and research, I know that the Device has

capabilities that allow it to serve as a wireless telephone, digital camera, portable media

8

player, and a GPS device, as well as allow it to use the internet.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23.   Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

24. *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

> g)      Data on the storage medium can provide evidence of a file that was once the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.
>
> h)      Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.
>
> i)      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.
>
> j)      The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic

9

process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

k)     The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

l)     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

26. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

27.  I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

s/Ryan McElroy

Ryan McElroy
Special Agent
Federal Bureau of Investigation

Attested to by reliable electronic means in accordance with Fed. R. Crim. P. 4.1 on
March ___30___, 2022.        s/Eric I. Long

Hon. Eric I. Long
United States Magistrate Judge
U.S. District Court for the Central District of Illinois

11

## ATTACHMENT A

The property to be searched is a black iPhone; Model: A1784 and FCC ID: BCG-E3092A. The Device was originally taken into evidence by the Bourbonnais Police Department for Bourbonnais PD Case Number 2022-00005407. The Device was taken into FBI custody on March 28, 2022 and is currently in FBI possession at the Champaign Resident Agency at 2117 W Park Ct in Champaign, Illinois.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.



*Photographs of the Device (front and back)*

1

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to

violations of 18 United States Code § 924(c) and §2119, including:

a.  Identity of suppliers of firearms to LADONTA A. TUCKER, including any information related to sources of firearms (including names, addresses, phone numbers, or any other identifying information);

b.  any information recording LADONTA A. TUCKER's schedule or travel in preparation of the March 17, 2022 robbery;

c.  all bank records, checks, credit card bills, account information, and other financial records;

d.  photographs indicating possession, use, transfer of firearms by and to prohibited persons;

e.  traveling to the robbery location located near 865 Gettysburg Dr, Bourbonnais, Illinois;

f.  photographs of the stolen vehicle or robbery location located near 865 Gettysburg Dr, Bourbonnais, Illinois;

g.  internet searches for information helpful in preparation of an armed robbery;

h.  internet searches for items to be purchased to be used in the robbery that occurred near 865 Gettysburg Dr, Bourbonnais, Illinois;

i.  GPS location information describing LADONTA A. TUCKER' movements in preparation of the robbery that occurred near 865 Gettysburg Dr, Bourbonnais, Illinois;

j.  text messages discussing any preparation of or plan to commit the robbery that occurred near 865 Gettysburg Dr, Bourbonnais, Illinois;

k.  call logs with co-conspirators, both known and unknown;

l.  contact information of co-conspirators, both known and unknown;

m.  records indicating preparation or plans to sell or transfer the stolen items taken during the course of the robbery that occurred near 865 Gettysburg Dr, Bourbonnais, Illinois;

n.  text messages discussing the means and methods of transferring stolen items after they are acquired;

o.  photographs of items to be stolen in preparation of reselling those items;

p.  internet searches for information helpful in preparation of transferring stolen items after they are acquired; and

q.  internet searches for information helpful in locating purchasers of stolen items after they are acquired.

2.     Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.